IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MANUEL VASQUEZ,

       Plaintiff,

v.                                                                                                                Civ. No. 03-0896 JP/RLP

CIBOLA COUNTY, NEW MEXICO;
CIBOLA COUNTY CORRECTIONAL CENTER,
a New Mexico county detention center;
MIKE OELCHER and DAN HARRISON,
Cibola County, New Mexico Sheriff's Deputies;
MANUEL LUJAN, Cibola County Sheriff, and
JOHNNY VALDEZ, Cibola County Undersheriff,
as individuals and in their official capacities,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Manuel Vasquez brought this action under 42 U.S.C. Section 1983 and New Mexico state law for events arising from the arrest of Plaintiff in his home without a warrant by Defendant Police Officers Mike Oelcher and Dan Harrison. Plaintiff filed suit against Officers Oelcher and Harrison; their supervisors, Cibola County Sheriff Manuel Lujan and Undersheriff Johnny Valdez; Cibola County; and Cibola County Correctional Facility alleging tortious false imprisonment (Count One), assault (Count Two), battery (Count Three), false arrest (Count Four), negligent causation of arrest (Count Five), negligent supervision and training (Count Six),

1

Fourth and Fourteenth Amendment[1] violations under 42 U.S.C. Section 1983 for unreasonable seizure (Count Seven), and malicious prosecution (Count Eight).  This Memorandum Opinion and Order addresses two motions: Defendants' Motion for Partial Summary Judgment on Plaintiff's Section 1983 Wrongful Arrest Claims and Defendants' Motion for Partial Summary Judgment on Plaintiff's State Tort Claims, both filed on May 3, 2004 (Doc. No. 32 and 33). Defendants move for partial summary judgment regarding the Section 1983 claims against Cibola County, Officer Mike Oelcher, Officer Dan Harrison, Sheriff Manuel Lujan, and Undersheriff Johnny Valdez contained in Count Seven.  Defendants also move for summary judgment on the state claims against these same Defendants in Counts One, Two, Three, Four, Five, Six, and Eight.[2]  After a careful review of the law, the briefs and evidence in the record, I conclude that Defendants' Motion for Partial Summary Judgment on Plaintiff's Section 1983 Wrongful Arrest Claims should be granted and Defendants' Motion for Partial Summary Judgment on Plaintiff's State Tort Claims should be granted in part in that Plaintiff's state tort claims will be dismissed without prejudice.

**A.  Factual Background**

The following facts are undisputed unless otherwise noted.  On October 5, 2002, two sheriff's deputies, Mike Oelcher and Dan Harrison,  pulled up in front of Plaintiff's house at

---

[1] Plaintiff avers, in the alternative, a violation of procedural due process under the Fourteenth Amendment. Compl., ¶ 68.  Plaintiff has not independently developed the Fourteenth Amendment claim; instead the necessary allegations and presentation of evidence are indistinguishable from the Fourth Amendment claim. As a result, I exercise my discretion to dismiss sua sponte the Fourteenth Amendment claim under Fed. R. Civ. P. 12(b)(6).  See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001).

[2] This Court dismissed with prejudice all claims against Cibola County Correctional Center on March 19, 2004.

approximately 5:35 p.m. and knocked on Plaintiff's door. Aff. M. Vasquez, Pl. Ex. 2. Plaintiff answered the door. Pl. Ex. 2. After the officers spoke with Plaintiff, they determined they were speaking to Manuel Vasquez, Sr., and informed Plaintiff a warrant existed for his arrest. Pl. Ex. 2. The officers checked with the Plaintiff to make sure Plaintiff's social security number matched the social security number on the information provided to them. Pl. Ex. 2. Plaintiff asked to see the warrant and the officers informed him that they did not have to show it to him. Pl. Ex. 2. However, Plaintiff did see that one of the officers had a white piece of paper with lines typed across the top of it. Pl. Ex. 2. Despite Plaintiff's protestations, the officers handcuffed Plaintiff to take him to the Cibola County Correctional Center. Pl. Ex. 2. During the car ride, Plaintiff told the officers that they were making a mistake and in response the officers stopped their car and reviewed Plaintiff's driver's license. The officers determined that the bench warrant listed on the National Crime Information Center (NCIC) printout they possessed was for Plaintiff and proceeded to take Plaintiff to the Cibola County Correctional Facility. Pl. Ex. 2. Officers Oelcher and Harrison attached a copy of the October 5, 2002 NCIC report, which shows an outstanding bench warrant for Plaintiff's arrest, to their affidavits. Def. Ex. A. Personnel at the Cibola County Correctional Center told the arresting officers that they could not book Plaintiff without an actual warrant and that the NCIC printout one of officers presented was insufficient for booking. Pl. Ex. 2. Booking personnel, however, proceeded to take Plaintiff's photo and collect his personal effects. Pl. Ex. 2. An acquaintance of Plaintiff's saw Plaintiff at the correctional facility and arranged for Plaintiff to remain in a holding room until Plaintiff's wife could post bail for his release. Pl. Ex. 2.

Nearly two years prior this incident, on December 12, 2000, Judge Roxanne Heath of the McKinley County Magistrate Court had issued a bench warrant for Plaintiff's arrest. Pl. Ex. 1. Judge Heath canceled this warrant on December 14, 2000, two days after its issuance. Pl. Ex. 2. Arresting officers Oelcher and Harrison assert that on the day of the arrest, October 5, 2002, they instructed their dispatcher to run Manuel Vasquez, Sr.'s name through the NCIC database. Aff. Oelcher Def. Ex. A; Aff. Harrison Def. Ex. B.[3]  A computer printout from the NCIC database showed a "hit confirmation response." Def. Ex. A. The arresting officers learned after the Plaintiff was arrested and brought to the Cibola County Correctional Center that the McKinley County Magistrate Court issued a Notice of Cancellation of Warrant to the New Mexico State Police Law Enforcement System. Def. Ex. A; Def Ex. B. Plaintiff disputes what the arresting officers knew and when they knew it. Plaintiff challenges Oelcher and Harrison's assertions that (1) they had their dispatcher run Plaintiff's name through the NCIC database; (2) the dispatcher confirmed the warrant with the New Mexico State Police; (3) the NCIC database printout was valid;[4] and (4) the NCIC database reported a hit on the arrest day, October 5, 2002. The only evidence Plaintiff presented in support of his challenges was that Plaintiff's later investigation indicated no reference to Plaintiff in the NCIC database on October 7, 2002. No party presented to this Court information that would elucidate the factual dispute, such as records of calls to dispatchers, hallmarks of authenticity of an NCIC printout, or whether or not the NCIC database

---

[3] The content of the unnamed dispatcher's statements are not contained in the affidavits. To the extent that what the dispatcher might have said is an out of court statement offered to prove the state of mind of Oelcher and Harrison, I can consider it. I will not consider what the dispatcher might have said to prove the truth of the matter because it is inadmissible hearsay and speculative.

[4] Plaintiff has not objected to the authenticity of this document, so for purposes of this motion I take the NCIC printout to be authentic.

saves warrants that have been executed.

### B.  Legal Standard for Summary Judgment

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  See Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact.  See Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant.  Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).  The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings.  Bacchus, 939 F.2d at 891.  To withstand a motion for summary judgment, the non-movant must make specific reference to admissible evidence in the record.  See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995).  Unsubstantiated allegations, no matter how true they might be, cannot be considered.  See id.

### C. Discussion of Burden of Nonmovant in Summary Judgment

As required by Rule 56(c), Defendants contend there is no genuine issue of material fact.  Plaintiff counters that there are genuine issues of material fact.  Specifically, Plaintiff disputes that

1) Oelcher and Harrison requested their dispatcher run Plaintiff's name through the NCIC database; 2) they understood that the dispatcher confirmed the warrant with the New Mexico State Police; 3) the NCIC database printout was valid (Def. Ex. A); 4) the NCIC database reported a hit on the arrest day, October 5, 2002; and 5) Oelcher and Harrison were unaware of the warrant's cancellation at the time of the arrest.

As the nonmovant, the Plaintiff has the burden of doing more than merely disputing the facts as stated by the Defendants and supported by their affidavits.  Under Rule 56(e), "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial."  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("opponent must do more than simply show that there is some metaphysical doubt as to the material facts").  This the Plaintiff has not done.  In his Response, Plaintiff states there are issues in dispute, but Plaintiff does not cite to admissible evidence such as affidavits, depositions, answers to interrogatories or admissions as support for his argument.  Bald hope that the Plaintiff will be able to discredit the Defendants at trial does not rise to the level of disputed material fact, and summary judgment is therefore appropriate.  See Clifton v. Craig, 924 F.2d 182, 183 (10th Cir. 1991).  Rule 56(e) continues, "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

In his Response Plaintiff claims that two days after his arrest, on October 7, 2002, Plaintiff's own investigation revealed no references to his name in the NCIC database.  I consider

this assertion in the light most favorable to the Plaintiff even though this statement is not contained in Plaintiff's sworn affidavit and Plaintiff does not point to any admissible evidence to support the assertion. But even assuming it to be true, I believe it is not relevant or material enough for the Plaintiff to survive summary judgment. The critical date is October 5, 2002. The contents of the NCIC database two days later on October 7, 2002 do not prove or disprove what was in the database on October 5, 2002. Furthermore, the Defendants present sworn affidavits with the October 5, 2002 NCIC report attached showing the existence of a valid warrant. The arrest on October 5, 2002 could have triggered a law enforcement agency's updating of the NCIC database on October 5 or 6, 2002, by deleting reference to the bench warrant for Plaintiff's arrest soon after the arrest was made. It is reasonable to assume that once a bench warrant for arrest is satisfied, it is immediately deleted from the NCIC database so that law enforcement officials will not have to continue looking for the person who is the subject of the bench warrant. Plaintiff has not presented any admissible evidence that would permit me to infer that the absence of Plaintiff's name in the NCIC database on October 7, 2002 could mean that it was not in the database on October 5, 2002. Without some admissible evidence linking the content of the database on October 7, 2002 to the information in the database on October 5, 2002, there is no genuine issue for trial.

**D. Discussion of Qualified Immunity and Section 1983 Wrongful Arrest Claims**

As stated above, summary judgment is appropriate under Rule 56(e) because Plaintiff has not carried his burden of creating a genuine issue of material fact by presenting the requisite admissible evidence. Moreover, the facts viewed in a light most favorable to the Plaintiff do not

7

constitute Fourth and Fourteenth Amendment violations.  Therefore, Defendants are entitled to qualified immunity and summary judgment is additionally appropriate under constitutional standards.

   Defendants argue that Oelcher and Harrison are entitled to qualified immunity because Plaintiff cannot demonstrate that Plaintiff's constitutional rights were violated and that Defendants Lujan and Valdez are entitled to qualified immunity in their individual capacities because they did not participate in the arrest.  Under the qualified immunity doctrine, government officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Woodward v. City of Worland, 977 F.2d 1392, 1396 (10th Cir. 1992) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity operates to "protect officers from the sometimes 'hazy border between excessive and acceptable force,'" and "to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful."  See Saucier v. Katz, 533 U.S. 194, 206 (2001).  The framework for analyzing a claim of qualified immunity is as follows: "Once a defendant pleads qualified immunity, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right, and (2) demonstrating that the right was clearly established at the time of the conduct at issue."  Baptiste v. J.C. Penny Co., 147 F.3d 1252, 1255 (10th Cir. 1998); see also County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998).  "When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test."  See Nelson v. McMullen, 207 F.3d 1202, 1206 (10th Cir. 2000.)  In order to

meet this burden, "the plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated that right with specificity." Baptiste, 147 F.3d at 1255. This is a heavy burden for the plaintiff. See Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). If, and only if, the plaintiff establishes both elements of the qualified immunity test does a defendant then bear the traditional burden of showing "'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" See Nelson, 207 F.3d at 1206 (quoting Albright v. Rodriguez, 51 F.3d 1531, 1535).

The Fourth Amendment protects individuals from unreasonable search and seizure. Since the Defendants concede that a seizure occurred, the question for decision is whether or not this particular seizure can be considered unreasonable. Reasonableness in the Fourth Amendment context is judged on an objective, not a subjective, standard and can be decided by the court rather than a jury. See Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1196, (10th Cir. 2001) *citing* Terry v. Ohio, 392 U.S. 1, 21 (1968) ("The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?")

The arresting officers' reliance on the NCIC database in effectuating an arrest is reasonable. See Ramirez v. City of Wichita, 78 F.3d 597, (10th Cir. 1996) *quoting* United States

v. Hines, 564 F.2d 925, 927 (10th Cir. 1977) *cert. denied*, 98 S.Ct. 748 (1978) ("information received from the NCIC computer bank has been routinely accepted in establishing probable cause for a valid arrest"). The Court of Appeals for the Tenth Circuit decided the nearly identical issues presented here when it affirmed the dismissal of a suit brought by the plaintiff in Hill v. Bogans, 735 F.2d 391 (10th Cir. 1984). The plaintiff sued an individual arresting officer under Section 1983 for Fourth Amendment violations because the officer arrested plaintiff on the basis of a warrant that erroneously remained in a police database. The arresting officer did not go beyond police procedures to determine the current validity of the warrant when the plaintiff protested. Here, I come to the same conclusion as the Tenth Circuit did in Hill and with the same reasoning. Oelcher and Harrison "acted reasonably in relying on routine police procedures for establishing the existence of an outstanding warrant. [The officers] should not be held responsible for the failure of county personnel to clear the warrant from the records." Id. at 393. The Fourth Amendment permits an officer to rely on computer notification and does not require the officer to obtain a copy of the warrant or research supporting documentation. See Smyth v. City of Lakewood, No. 95-1481, 1996 WL 194715 (D. Colo. April 19, 1996). In addition to the reasonableness of relying on a computer database listing an outstanding warrant, the arresting officer's reliance on the dispatcher is reasonable, even when the dispatcher makes a mistake as to some of the identifying elements of the suspect. See United States v. Shareef, 100 F.3d 1491, 1503 (10th Cir. 1996). See also United States v. Hensley, 469 U.S. 221, 231 (1985) (officers can rely on police bulletins to make a stop when the bulletin is based on articulable facts).

    Plaintiff urges this Court to give great weight to the fact that Plaintiff's arrest occurred

10

within Plaintiff's home because "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." See United States v. United States District Court, 407 U.S. 297, 313 (1972). A warrantless arrest inside the home is presumptively unreasonable. See Payton v. New York, 445 U.S. 573, 586 (1980). These statements, while true, are inapplicable to this case. Payton is not persuasive because the officers in this case reasonably relied on the NCIC computer database regarding the existence of the warrant and Plaintiff has not presented sufficient evidence to argue that Officers Oelcher and Harrison knowingly proceeded without a warrant to make an arrest in the home as occurred in Payton. Similarly unpersuasive is Plaintiff's citation to Groh v. Ramirez, 124 S. Ct. 1284 (2004), a case in which the United States Supreme Court found that officers who searched a home pursuant to a facially invalid search warrant were not entitled to qualified immunity. Because Groh involved a facially invalid search warrant, 124 S. Ct. at 1289, it is distinguished from this case in which Plaintiff has not alleged that the warrant was facially invalid; in fact, Plaintiff's exhibit 1 shows that the warrant is valid on its face.

Because I conclude that as a matter of law that arresting Officers Oelcher and Harrison committed no unreasonable seizure in violation of the Fourth Amendment, they are entitled to qualified immunity. It follows that the constitutional claims (Count Seven) against supervisors Sheriff Lujan and Undersheriff Valdez and the claims against Cibola County also fail. See City of Los Angeles v. Heller, 475 U.S. 796 (1986); Trigalet v. City of Tulsa, 239 F.3d 1150 (10th Cir. 2001) (local government not liable when no underlying constitutional violation is found). Hence, Defendants Oelcher, Harrison, Lujan, Valdez and the County are entitled to summary judgment.

**E. Discussion of State Tort Claims**

The Defendants move for summary judgment on Plaintiff's seven other claims, which are grounded in New Mexico state law. The relevant statute is the New Mexico Tort Claims Act ("Act"), specifically sections 41-4-4(A) regarding immunity from tort liability and 41-4-12 addressing the liability of law enforcement officers. The Act grants broad immunity to public employees, such as Officers Oelcher and Harrison. "A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability from any tort except as waived by Sections 41-4-5 through 4-4-12 NMSA 1978." NMSA 1978, Section 41-4-4(A) (1976). The state legislature balanced the interests of protecting the state fisc with a plaintiff's interest in suing by carving out exceptions to this immunity for certain conduct by law enforcement officers. "The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties." NMSA, 1978 Section 41-4-12 (1976). "A party claiming an exception to the Tort Claims Act must establish that exception as being within the words of the exception as well as the reason for the exception." See Smith v. Village of Corrales, 103 N.M. 734, 737, 713 P.2d 4, 7 (1985) *cert. denied*, 103 N.M. 740, 713 P.2d 556 (1986).

The New Mexico Tort Claims Act permits suits against state law enforcement officers in

12

state court. See NMSA 1978, Sections 41-4-12; Flores v. Long, 926 F. Supp. 166 (D.N.M. 1995).  However, New Mexico has not waived immunity for suits brought in federal court.  See NMSA 1978, Sections 41-4-4(F); Wojciechowski v. Harriman, 607 F.Supp. 631 (D.N.M.1985). Furthermore, neither party addressed the implications of the Eleventh Amendment to the United States Constitution, which may bar this Court from proceeding in this action.  For these two reasons, I exercise my discretion not to consider the pendent state law claims.  28 U.S.C. Section 1367(c)(3).

I sympathize with Plaintiff's justified humiliation, degradation and ire at the mistakes that were made at his expense on October 5, 2002.  Where there is a wrong, there should be a remedy. Unfortunately for Plaintiff, that remedy does not lie in Section 1983 and I defer to the state courts of New Mexico for a decision on the state law claims.

THEREFORE it is ORDERED that Defendants' Motion for Partial Summary Judgment on Plaintiff's Section 1983 Wrongful Arrest Claims will be GRANTED and the Plaintiff's Section 1983 claims (Count Seven) will be dismissed with prejudice.

IT IS FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment on Plaintiff's State Tort Claims is GRANTED IN PART and Plaintiff's state law tort claims (Counts One, Two, Three, Four, Five, Six, and Eight) will be dismissed without prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE

13